**GRANT et 'al. v. PENDLEY et al.** (No. 9302.)

Court of Civil Appeals of Texas. Galveston. Nov. 21, 1929.

Rehearing Denied Dec. 12, 1929.

B. H. Gardner, T. B. Greenwood, Jr., and B. R. Reeves, all of Palestine, for appellants.

Melton & Melton, of Chickasha, Okl., and W. C. Campbell, of Palestine, for appellees.

GRAVES, J. Appellants, children and only heirs of Leona and Ida Pendley, both deceased, through this appeal complain of a judgment in favor of the appellees, their mothers' living brothers, J. M. and H. M.

Pendley, and the children and only heirs of a third brother, W. F. Pendley, deceased, vesting in them the title and possession of the east half of the H. W. Neville 640-acre survey of land in Anderson county as against appellants, and denying appellants any recovery upon their cross-action against the appellees, whereby they sought to set aside a deed to the land they had previously, on January 29, 1917, executed and delivered to their three named uncles when all were alive, on the ground that the deed had been procured from them by the latters' false and fraudulent representations.

The three Pendleys brought the suit in trespass to try title, declaring upon this deed to them from appellants, but alleging that an error clouding their title to the land appeared upon its face, in that, by inadvertence, the names of the grantors therein had been written into its habendum clause instead of those of the grantees, which cloud they prayed to have removed, along with a judgment for the title and possession of the tract.

The appellants, in answer, admitted their execution and delivery of the deed, but in the cross-action referred to declared themselves not bound by it because of the alleged fraud inducing it, and prayed for its cancellation, together with their resulting rights both in the land itself and in whatever net revenues appellees had received therefrom since the date of the challenged deed; their material averments as to the claimed fraud being, in substance:

"That about the time of the execution of said deed by these defendants, the plaintiffs, J. M. Pendley and H. M. Pendley, visited these defendants, at their respective residences aforesaid, and with the wrongful and fraudulent design of obtaining the interest of these defendants in said land, at a sum below its real value, falsely represented to them that the land was poor sandy pine land, with all the old pine cut, and was of very little value, in fact the pine timber was worthless, and could not be used for anything unless it might be for posts later on. That the pine then on the land was very small and young, about knee high. * * * That the aforesaid false statements were made jointly and separately by said H. M. Pendley and J. M. Pendley, acting for themselves and their brother, W. F. Pendley, and said statements were made jointly and separately by said H. M. Pendley and J. M. Pendley to these defendants. They also stated that the back taxes had to be paid and the amount they were offering to pay, to wit, $500.00, to the grantors named in the said deed for their interest was all and more than their interest was worth, this being at the rate of not more than $6.25 an acre, besides back taxes.

"Said J. M. Pendley and H. M. Pendley fraudulently withheld from these defendants the fact that oil prospects and indications for this land were considered good, and which fact they well knew. Being asked as to oil and oil prospects, said Pendleys falsely and fraudulently stated to these defendants that there was nothing of the kind."

Issue being joined between the parties on these averments, that became the only fact question in the cause, and the learned trial judge submitted it to a jury, separately as concerned each set of the appellants, in these two inquiries:

"Question No. 1. Do you find from a preponderance of the evidence that J. M. Pendley and H. M. Pendley, or either of them, in purchasing the interest of defendants, Clara Grant, and her husband, Morgan Grant, to the land in controversy, in 1917, made any false or fraudulent representation or statement to said Clara Grant, or Morgan Grant, as to the character, or value of said land, or of the character, or value of the timber thereon, or of the oil and mineral prospects thereon, for the purpose of inducing them, or either of them, to sign the Deed thereto? Answer Yes or No. * * *

"Question No. 4. Do you find from a preponderance of the evidence that J. M. Pendley and H. M. Pendley, or either of them, in purchasing the interest of defendants, Clara Grant, and husband, Morgan Grant, to said land, withheld from defendants Clara Grant and Morgan Grant, or either of them, the facts within their knowledge, pertaining to the character, or value of said land, the timber thereon, or the oil and mineral value thereof, at the time, with the intent and purpose of inducing said defendants, or either of them to execute the deed? Answer Yes or No."

On the return of a verdict answering "No" to all these questions the challenged judgment entered.

In this court appellants' counsel very ably urge that prejudicial error was committed below in each and all of these respects:

(1) In permitting appellees' attorney, over objection, to state to the jury the nature of their defense to appellants' cross-action seeking to cancel the 1917 deed, together with the facts relied on to uphold such defense, before the evidence in support of the cross-bill had been heard.

(2) In permitting witnesses, over objection, to testify to the good reputation in the community where they lived in the state of Oklahoma, of appellees J. M. and H. M. Pendley as being truthful men, as well as honest and law-abiding citizens, they not having testified as witnesses and neither their characters nor reputations having been put in issue in either respect, "and this is true though defendants were seeking to set aside a deed procured by the alleged false and fraudulent representation of these plaintiffs, and said plaintiffs later testified."

(3) In not granting a new trial, first. "because appellants were deprived of the evidence of appellant Taylor denying the state-

ment of one of the Pendleys that he had offered to advance Taylor's part of the back taxes, the attorney for the Pendleys having been the cause of appellants' attorney not asking for a postponement, by making the misleading statement to said attorney that he knew Taylor was not coming to the trial, and that Taylor had told him in his office, only a short while before, that he did not intend to come to the trial"; second, "on the ground that the leading attorney for plaintiffs, while making the closing argument before the jury and after stating he was from Oklahoma, and while commenting on the absence of Taylor, and after discussing the testimony of the Pendleys to the effect that they had offered to advance Taylor's part of the back taxes, said, in a knowing and insinuating way, that he knew why Taylor was not here, and it was all a pretense about attorneys expecting him to come to this trial. That it was never intended for him to come and that is the reason they took his depositions."

(4) In not granting a new trial, further, "on the ground that the undisputed evidence shows that in 1917 the Pendleys did represent to these defendants that the land was poor and of little value, and that land and timber was of no greater value than the money paid and accrued taxes, all told being of the value of about $1,000. In 1927 over 40,000 railroad ties and other valuable lumber was taken from the land for $4,000.00 and yet no pines cut under 12 inches in diameter. In fact the timber left standing on the land is larger than was represented to the defendants in 1917. And the trees on the land show for themselves that they had not grown more than a one-sixth in ten years"; and "on the showing that the statements made by the Pendleys to these defendants, as to the timber and value of same, were shown to be untrue by the undisputed physical facts, and the statements were made to induce defendants to sign the deed, and this is true even if the Pendleys had themselves been misled, or were ignorant as to the timber."

After careful consideration of the record and statement of facts, aided as the court has been by the able briefs and arguments of counsel for both sides, we conclude that none of these presentments can be sustained.

■ As concerns the first, the bill of exceptions as qualified by the trial judge shows a procedural irregularity, perhaps, in that appellees' counsel, following the reading to the jury of all the pleadings, plaintiffs' petition, defendants' answer and cross-bill, and plaintiffs' reply thereto, were then permitted in a single statement, made before the receipt of evidence in support of the cross-bill, to sum up what they expected to prove in defeat of that opposing plea as well as in substantiation of their original cause of action, instead of being required to split up the summary into two parts and present the one re-

lating to the matter adduced in the cross-action only after supporting testimony thereunder had been presented by the other side, which would seem to have been the better practice under Rev. St. 1925, art. 2180; but no reversible or harmful error inheres in it, we think, especially in view of the fact that, after the objection of defendants' counsel to this method of proceeding had been overruled, this further occurred:

"Whereupon defendant's counsel remarked that in view of the court's ruling he would reply to the statements and summing-up of plaintiffs' counsel, and which he was permitted to do fully by the court, and did do, reviewing fully and in detail to the jury the facts that defendants expected to prove in support of their cross-action. * * *

"At the close of the statements and summing-up of defendants' counsel, plaintiffs' counsel remarked that in as much as Judge Gardner, defendants' counsel, had proceeded at length in his summing-up to the jury, that he, plaintiffs' counsel, desired to make a short reply and further statement of plaintiffs' case and defenses, which he was permitted to do and did do, without further objection thereto being made by defendants."

■ The facts underlying the admission of the testimony as to reputation, next complained of, were, in substance: The two appellees themselves had not testified, as appellants' proposition recites, hence this testimony was not offered by the appellees for the purpose of supporting or "bolstering up" their own testimony, but on the view that their characters and reputations as to being truthful men, as well as honest and law-abiding citizens, had been attacked by opposing litigants both by their pleadings and evidence; the appellees were nonresidents of and strangers in Texas, having lived all their lives in the community in Oklahoma, from whence this challenged testimony came and being best known there; at the time it was admitted, the previously quoted from cross-bill of appellants charging the two Pendleys both with intentional deceit and otherwise with actionable or legal fraud was before the jury, together with the testimony of certain ones of the appellants thus epitomized in the appellees' brief in this court:

"Appellant and witness, Will Yerby, testified: 'Yes, sir, it is by misrepresentations that Mr. Pendley made to me that I seek to set this deed aside.' Mrs. Stella Yerby also testified that Pendley had misrepresented the facts to her about the land, as did also Mrs. Clara Grant."

In these circumstances we conclude that the only material issue, under the form of the questions submitted to the jury, being whether or not these appellees had made such misrepresentations as to actual facts then existing concerning the land and timber to the appellants as entitled the latter to have the 1917 deed canceled, irrespective of their intent or

purpose in making them, the receipt of this testimony, if error at all, affected only an immaterial consideration; hence was not such as probably caused the rendition of an improper verdict and judgment. No reversal should therefore be ordered on account of it.

The writer, however, is of the individual opinion that, had the matter to which it related been material, the receipt of the testimony in the circumstances could not have been held to be erroneous. Brannon v. Gartman (Tex. Com. App.) 288 S. W. 817.

The two remaining contentions will be disposed of under the numbers given them, supra.

■ (3) The record fails to show that such an understanding as the first prong of this contention rests upon was had between the rival attorneys, or that those representing appellees were in any way responsible for a deprivation to appellants of the testimony of their Mr. Taylor; in fact, their motion for new trial did not even charge as much, but only that the understanding was, if the witness Taylor "came at any time before the case went to the jury, he could testify." His non-arrival in time was not shown to have resulted from any alleged statement of appellees' counsel, but from an accident to himself en route. In any event, the trial court heard the motion for new trial, along with the evidence tendered in support thereof, and overruled it, thereby finding adversely to appellants as to the facts alleged therein. This court is bound by that determination.

■ An even greater dearth appears as to the complained-of comments of the same counsel upon Mr. Taylor's absence; there being no bill of exceptions about the matter, nor any ruling or other record showing, either that the alleged argument was objected to, or in fact made at all. Mere averments to such purport appearing in the motion for new trial, which was overruled after a full hearing on the facts alleged, obviously present nothing for review upon appeal.

■ (4) The two quoted propositions relating to this, the sole field of controversy before the jury, simply in sum assert that the undisputed evidence, reflected both in other ways and through unquestioned physical facts, shows that the Pendleys did in 1917 misrepresent to the appellants, to induce them to sign the deed at that time, the quality and value of both the land and the timber thereon, as well as the size and quantity of the latter, and that in consequence, even though they themselves had then been misled or were ignorant as concerned the timber in making such statements, appellants were entitled to a new trial.

A sufficient answer is to say that no such undisputed state of proof appears. On the contrary, there is not shown a preponderance against the verdict that would justify this court in setting it aside. To say nothing of conflicts, there was testimony justifying the jury in finding that the Pendleys did not in any respect materially misstate or misrepresent the conditions in fact existing in 1917 with reference either to the condition and value of the land, or to the quantity, character, and value of the timber thereon; that the tract at that time was poor, sandy land, worth very little, having no value for oil or gas, with accumulated unpaid taxes against it, and with no large timber on it; or, to state the whole matter in a nutshell by summarizing the testimony of one witness 62 years old, who had lived around and been familiar with this land since he was 6 years old, and who was corroborated by other witnesses having like opportunity to know the facts; The land had a good growth of young pine on it in 1917; it was not merchantable; there was no market for that character of timber at that time; witness had timber of that same kind; it was not merchantable; the last of the old virgin timber had been cut off the land between 1898 and 1902, within that four years. He lived at that time near Alder branch, and, when he moved back close to the Pendley land in 1902, the greater part of the larger timber had been cut then. There was not any merchantable timber left on this tract of land.

■ Appellants themselves raised this issue through the quoted averments of their cross-action, and offered much testimony as in substantiation; the court fairly submitted it in the special issues given, appellants neither objecting to those nor making any request for the submission of other or different ones; the jury, in answering, found, upon sufficient evidence, that no such false or fraudulent representations and no such concealments, as were alleged occurred. That settled the controversy, even though this court might take judicial knowledge, without evidence, of such generally known facts of a public nature as the learned counsel for appellants refer to in their arguments here; it certainly, however, could not judicially know the contrary of what the jury in this case thus so found from direct sources to have been the actual conditions appertaining to a particular tract of privately owned land in the piney woods of East Texas back in 1917, which finding must be held to have been finally determinative of the cause upon that feature.

■ Neither, we think, does any fundamental error appear from the fact that the court "included in the questions submitted to the jury the issue as to whether said misrepresentations were fraudulent," and as to whether they were made for the purpose of inducing the grantors "to sign the deed," as is urged by counsel for appellants in an argument filed since the submission of the cause.

As has been already indicated, a reference to the form of the inquiries to the jury will disclose that they were in the disjunctive— that is, they did not ask whether the appellees made any false *and* fraudulent representations, but in each instance whether they

"made any false *or* fraudulent representation, or statement," etc., and the jury answered that *neither* were in fact made—so that, it becomes wholly immaterial to the result that the special issues in the manner pointed out included an element not constituting an ultimate issue of fact under the law of the case, since the verdict and judgment rendered thereon can in no proper sense be said to have resulted from it.

Further discussion is deemed unnecessary, since these conclusions require an affirmance of the trial court's judgment; that order will be entered.

Affirmed.